**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.   1:20-cv-1435

DOUGLAS WOODS, an individual

    Plaintiff,

v.

ROCKY VISTA UNIVERSITY;
BOARD OF TRUSTEES OF ROCKY VISTA UNIVERSITY;
THOMAS TOLD, individually and in his official capacity as Vice President for Academic Affairs and Dean for Rocky Vista University;
AMY SCHLUETER, individually and in her official capacity as Associate Dean of Student Affairs for Rocky Vista University;

    Defendant,

---

**COMPLAINT WITH JURY DEMAND**

---

Douglas Woods ("Mr. Woods" or "Plaintiff"), by and through counsel, Igor Raykin and Makenzie Bogart of Kishinevsky & Raykin, LLC, respectfully files this action against Defendants Rocky Vista University ("RVU"), the Board of Trustees of Rocky Vista University ("Board" or "Board of Trustees"), Thomas Told ("Dean Told"), and Amy Schlueter ("Ms. Schlueter") and states on information and belief as follows. This action seeks injunctive relief and appropriate damages and costs.

### I.    JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.  Federal question jurisdiction arises under the Constitution and laws of the United States of America, including but not limited to the Americans with Disabilities Act (42 U.S.C. 12101 *et seq.*) and Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 701 *et seq.*).

2. The Court has jurisdiction over the state law claims under 28 U.S.C. § 1367.

3. Plaintiff Douglas Woods is a resident of Arapahoe County, Colorado.

4. Defendant Rocky Vista University has as its principal place of business Douglas County, Colorado.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b) as the wrongful acts alleged by the Plaintiff occurred in whole or in part in Douglas County, Colorado.

## I.     THE PARTIES

6. Mr. Woods has been a student at Rocky Vista University in the College of Osteopathic Medicine ("RVU" or "Defendant") since the summer of 2018.

7. Mr. Woods is a disabled individual as defined by the American with Disabilities Act ("ADA"). The ADA provides that an individual is disabled for purposes of the Act when a person has an impairment that "substantially limits a major life activity." 42 U.S.C. 12102(1). Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id*.

8. Mr. Woods' disabilities include post-traumatic stress disorder ("PTSD") an immune disorder called chronic reoccurring idiopathic angioedema which causes severe swelling of the body, typically the eyes and lips and attacks occur periodically.

9. Mr. Woods' disabilities substantially limit the major life activities of concentration and learning.

10. Mr. Woods is on medication and receives private counseling.

11. As a result of Mr. Woods' disabilities, he sought accommodations from RVU at the beginning of his enrollment at the university.

12. Mr. Woods went to the Director of Pre-Clinical Education, Dr. Jennifer Montemayor ("Dr. Montemayor"), at the start of the school year during the summer of 2018 and discussed with her the idiopathic angioedema he suffers from and its effects on his learning. Dr. Montemayor told Mr. Woods that he did not need formal accommodations and that he would be excused when he had an idiopathic angioedema episode.

13. Therefore, Mr. Woods began attending classes in reliance upon the statements of Dr. Montemayor, as an agent of RVU, with the belief that he would be excused during an episode.

14. During Mr. Woods' immunology course, he suffered a significant angioedema episode. His eyes were swollen to the point where he was unable to see the entire weekend before an exam. The swelling resolved on the day of the exam to the point where Mr. Woods could see so he took the exam with his eyes still partially swollen. As a result, Mr. Woods failed the exam and therefore the course and did not receive any accommodations despite his condition.

15. Mr. Woods then took a medical leave of absence for the remainder of the 2018-2019 school year.

16. When Mr. Woods returned to RVU following his medical leave of absence, he had to restart his medical education despite having passed all of his courses except his immunology course.

17. Still receiving no accommodations for his disability, Mr. Woods again began to struggle.

18. In January of 2019, Mr. Woods had received a formal diagnosis for PTSD and was informed by his doctor that PTSD exacerbates the idiopathic angioedema.

19. Mr. Woods' PTSD had been exacerbated due to a legal battle he was facing with the state of Washington over his pension from his time as a firefighter. His PTSD stemmed from his work as a firefighter.

20. As a result of his exacerbated disabilities and lack of accommodations, Mr. Woods failed his first course of the 2019-2020 academic year, which was a course he had already passed the prior year.

21. Mr. Woods was then informed that he was required to appear before the Student Performance Committee ("SPC") due to the course failure. Prior to the SPC meeting, Vice President for Academic Affairs and Dean Thomas Told ("Dean Told"), sent an email to the student body that stated:

> "Dear Student Doctors:
> I trust you had a restful summer and you are ready to go for the upcoming academic year. I am writing to update you regarding new COM academic standing policies, which were effective July 1, 2019.  Please consider the new policies to <u>supersede</u> the Dean's letter you received regarding the term of your academic probation period. Beginning with the new academic term, students repeating the year are no longer on academic probation. Please refer to the pages 64 & 65 of the student handbook for the definitions of good academic standing, academic warning, and academic probation. We hope that whatever challenges you had in the past are resolved and that this gives you an opportunity to start with a clean slate and have a successful time going forward.
> Sincerely,
> Dr. Tom Told"

22.  Despite the student handbook change, Mr. Woods was still required to appear before the SPC. At this meeting, Mr. Woods disclosed his PTSD diagnosis as well as this legal battle with the state of Washington.

23. After the meeting, Associate Dean of Student Affairs Amy Schlueter ("Ms. Schlueter") met with Mr. Woods.  An accommodations meeting was discussed and scheduled. Mr. Woods wanted a student representative present at his accommodations meeting because of Ms. Schlueter's reputation among students for misrepresentation of facts. However, Ms. Schlueter denied Mr. Woods' request for a student representative.

24. Mr. Woods was then precluded from having the accommodations meeting by Ms. Schlueter and denied accommodations.

25. In November of 2019, Mr. Woods had failed his Respiratory course and was again required to appear before the SPC.

26. After his meeting with the SPC, Mr. Woods was recommended for dismissal.

27. Shortly thereafter, Mr. Woods was informed that he had failed another course, Osteopathic Manipulative Treatment ("OMT").

28. Mr. Woods then appealed the dismissal and met with the Vice President for Academic Affairs and Dean, Thomas Told ("Dean Told").

29. At this meeting, Dean Told offered to allow Mr. Woods to remediate the two courses contingent upon his completion and passing of another course, Renal I. After passing these courses, Mr. Woods was then to finish the Immunology course that he had been unable to complete due to another idiopathic angioedema episode.

30. Due to even more severe exacerbations of his disabilities, Mr. Woods asked for another medical leave of absence but was denied.

31. The semester ended on December 16, 2019 which was the date of the final exam for Renal I.

32. Mr. Woods requested additional days to study for and take the exam due to medical reasons, which was scheduled for December 20, 2019. The new date of Mr. Woods' exam was December 23, 2019.

33. Mr. Woods' Respiratory exam, contingent upon his passing of Renal I, was scheduled for January 6, 2020.

34. On December 21, 2019, Mr. Woods was in the emergency room for a separate medical emergency.

35. Mr. Woods did not want to share this sensitive health information with RVU, but Ms. Schlueter called him the same day from her personal phone while he was be treated in the emergency room. He was planning to disclose the fact that he was in the hospital until she began to harass and berate him for being unable to take his exam.

36. On December 23, 2019, Dean Told was notified that Mr. Woods failed Renal I and informed Mr. Woods that he would not be allowed to remediate the other courses he had failed.

37. Plaintiff was ultimately dismissed from RVU on January 2, 2020.

## II.   CLAIMS AND CAUSES OF ACTION

### A.  FIRST CLAIM FOR RELIEF
*(VIOLATION OF SECTION 504 OF THE REHABILITATION ACT- AGAINST RVU)*

38. Mr. Woods reincorporates and realleges all other paragraphs as if fully set forth herein.

39. Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794, and its implementing regulations apply to recipients of federal financial assistance from the Department of Education.  *See* 34 C.F.R. § 104.2.

40. RVU receives such federal financial assistance and is thus subject to Section 504.

41. Among other things, Section 504 requires that:

> A recipient may not, directly or through contractual or other arrangements, utilize criteria or methods of administration (i) that have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap, (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program with respect to handicapped persons, or (iii) that perpetuate the discrimination of another recipient if both recipients are subject to common administrative control or are agencies of the same states.  C.F.R. § 104.4(b)(4).

42. With regards to postsecondary educational entities, 34 C.F.R. § 104.43 prohibits universities receiving federal funds from excluding, discriminating against, or otherwise denying benefits to qualified students on the basis of their handicap.

43. Moreover, any such university must "make such modifications to its academic requirements as are necessary to ensure that such requirements do not discriminate or have the effect of discriminating, on the basis of handicap, against a qualified handicapped applicant or student." 34 C.F.R. § 104.44(a).

44. Education institutions have a "real obligation…to seek suitable means of reasonably accommodating a handicapped person *and to submit a factual record indicating that it conscientiously carried out this obligation.*" Wong v. Regents of the Univ. of California, 192 F.3d 807, 817 (1999) (quoting *Zukle v. Regents of the Univ. of California*, 166 F.3d 1041, 1048 (9th Cir. 1999) and *Wynne v. Tufts Univ. Sch. Of Med.*, 932 F.2d 19, 25-26 (1st Cir. 1991) (en banc)).

45. Mr. Woods was and is qualified to attend RVU.

46. Mr. Woods is a qualified individual with a disability under Section 504.

47. Despite notice of Mr. Wood's qualifying handicaps, Defendant intentionally discriminated against him, was deliberately indifferent to his rights, and intentionally denied him benefits solely on the basis of his disabilities and working to damage his academic prospects and professional reputation.

48. Defendant also failed to provide Mr. Woods with reasonable accommodations that allowed him access to his professional education. Although RVU allowed him to remediate courses, RVU did not provide Mr. Woods with the accommodations he needed which would have prevented him from needing to remediate the courses in the first place.

49. Accommodations such as counselling, tutors, note-takers, or taped lectures were not provided even after Mr. Woods gave notice to RVU about his diagnosis and made a formal request for accommodations.

50. Defendant's violation of Mr. Woods' rights under Section 504 caused Mr. Woods to suffer damages, including by not limited to psychological, emotional, and reputational damages in addition to the loss of educational opportunities, as well as attorney's fees incurred in this action.

### B. SECOND CLAIM FOR RELIEF
*(VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT-AGAINST ALL DEFENDANTS)*

51. Mr. Woods incorporates the allegations set forth above as if fully set forth herein.

52. Mr. Woods also seeks to enforce Title III of the Americans with Disabilities Act ("Title III"), which requires, among other things, that a public accommodation: (1) not deny persons with disabilities the benefits of its services, facilities, privileges and advantages; (2) not provide such persons with benefits that are unequal to those provided to nondisabled persons; Under Title III, places of accommodation include an "undergraduate, or postgraduate private school, or other place of education." 42 U.S.C. § 12181(7)(J).

53. On information and belief, RVU has received at all times relevant hereto, and continues to receive, federal student aid in the form of federal student loans and grants through the Free Application for Federal Student Aid. 29 U.S.C. § 794(a)-(b).

54. As an "undergraduate, or postgraduate private school," RVU is a place of public accommodation under the ADA. 42 U.S.C. § 12181(7)(J).

55. Because Defendant RVU receives federal financial assistance and is a place of public accommodation, it is subject to Title III.

56. Defendant RVU has engaged in illegal disability discrimination, as defined by Title III, by denying Mr. Woods the benefits of its services, facilities, privileges and advantages on the

basis of his disability and did not provide him with benefits that are equal to those provided to nondisabled persons.

57. Defendant RVU has violated Title III by, without limitation, failing to provide reasonable accommodations. Mr. Woods was arbitrarily denied accommodations for his disabilities when he started at the university.

58. Defendant RVU has further violated Title III by, without limitation, failing to provide reasonable accommodations after Mr. Woods obtained a diagnosis and was prepared to provide documentation for that diagnosis before he was dismissed from the university.

59. Defendant RVU's ongoing and continuing violations of Title III have caused and will continue to cause harm to Plaintiff.

60. Defendant's violation of Mr. Woods' rights under Title III caused Mr. Woods to suffer damages, including by not limited to psychological, emotional, and reputational damages in addition to the loss of educational and career opportunities, as well as attorney's fees incurred in this action.

### D. THIRD CLAIM FOR RELIEF
*(BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING – AGAINST RVU)*

61. Plaintiff reincorporates and realleges all other paragraphs as if fully set forth herein.

62. Plaintiff's agreement with RVU to provide educational services in exchange for the payment of tuition monies qualifies as a contract, involving the mutual exchange of promises, mutual assent, and supporting consideration.

63. Thus, it is subject to the duty of good faith and fair dealing that is implied into every contract, under which a contracting party is prohibited from exercising its discretion in a manner that

contradicts the other party's reasonable expectations thereunder or in a manner that deprives the other of their benefits under the contract.

64. RVU's actions in refusing to accommodate Plaintiff and preventing him from enjoying the benefits afforded to him under the contract breached the duty of good faith and fair dealing, causing him to suffer injuries, damages, and losses in an amount to be proven at trial.

## E. FOURTH CLAIM FOR RELIEF
### (*BREACH OF CONTRACT – AGAINST RVU*)

65. Plaintiff reincorporates and realleges all other paragraphs as if fully set forth herein.

66. Plaintiff's agreement with RVU to provide educational services in exchange for the payment of tuition monies qualifies as a contract, involving the mutual exchange of promises, mutual assent, and supporting consideration.

67. Part of that contract was RVU's promise to comply with its legal obligations not to discriminate against Plaintiff and to accommodate Plaintiff's disabilities.

68. Yet, in refusing to accommodate Plaintiff's documented disabilities, RVU breached, and in failing to accommodate his disabilities, which actions were unlawful, constitute a breach of that contract and caused him to suffer injuries, damages, and losses in an amount to be proven at trial.

## F. FIFTH CLAIM FOR RELIEF
### (*INJUNCTIVE RELIEF*)

69. Plaintiff realleges all other paragraphs as if fully set forth herein.

70. As evidenced by the dispute over Plaintiff's appropriate accommodations and this Complaint, an actual controversy exists between the parties as to whether the Defendants violated Section 504, the ADA, and the contract for educational services, and therefore an actual justiciable controversy is involved.

71. Under 42 U.S.C. 12188, Plaintiff petitions for injunctive relief including an order to Defendants to modify their policy, remove the failing grades and dismissal from Plaintiff's transcript, and amend his record to show that Plaintiff withdrew from RVU in good standing.

72. Plaintiff further requests that the Court: (1) issue a temporary restraining order and a preliminary injunction pursuant to F.R.C.P. 65, ordering Defendants, their officers, agents, employees, successors, attorneys, and all those in active concert or participation with them to refrain immediately and pending the final hearing and determination of this action from discriminatory conduct; (2) issue a permanent injunction perpetually enjoining and restraining Defendants, their officers, agents, employees, successors, attorneys, and all those in active concert or participation with them, of the conduct complain; (3) award to Plaintiff costs and disbursements, as well as reasonable attorney's fees; and (4) award Plaintiff such other and further relief as this Court may deem proper, including but not limited to requiring the Defendants to effect proper training to prevent the recurrence of such conduct in their hiring, firing, training and educational policies and procedures.

73. Plaintiff, requests that judgment enter in his favor and against the Defendants, in an amount to be determined by a judge or jury and that the Court also award the Plaintiff his legal fees and costs incurred in pursuing this action.

### III. DAMAGES

74. Defendants' discriminatory and retaliatory conduct described above has caused the Plaintiff the following damages:
    a. Lost future wages and benefits in amounts to be established at trial;
    b. Damage to professional reputation, in an amount to be established at trial;

    c. Emotional upset, stress, and anxiety in an amount to be established at trial;

    d. Medical costs and damages as a result of Defendants' discriminatory conduct in an amount to be established at trial;

    e. Out of pocket expenses, litigation costs, and attorney fees in amounts to be established at trial.

75. Defendant's violation of Title III was willful, entitling the plaintiff to an award of punitive damages to the fullest extent permitted by law.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the court enter judgment in his favor and against Defendants as follows:

76. A declaration that Defendant RVU's conduct as alleged here has violated, and continues to violate, Section 504 of the Rehabilitation Act of 1973, Title III of the Americans with Disabilities Act of 1990, and the regulations promulgated under those statutes;

77. Awarding the Plaintiff special damages for lost future wages, benefits, and out of pocket expenses in amounts to be established at trial;

78. Awarding the Plaintiff general damages for emotional distress and damage to professional reputation in an amount to be established at trial;

79. Punitive damages, pursuant to 42 U.S.C. § 1981, 2000(e), in the maximum amount permitted by law;

80. Awarding the Plaintiff statutory and reasonable attorney fees, litigation expenses, and costs incurred in this action;

81. Granting the Plaintiff injunctive relief;

82. Awarding the Plaintiff post-judgment interest on his lost wages award and economic loss; and

83. Awarding the Plaintiff any additional and further relief that the court finds equitable, appropriate, or just.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

*s/ Igor Raykin*
Igor Raykin, Esq. #43081
Kishinevsky & Raykin, Attorneys at Law
2851 South Parker Road, Suite 150
Aurora, CO 80014
Telephone: (720) 767-1846
E-mail: igor@coloradolawteam.com
Attorney for Plaintiff


*s/ Makenzie Bogart*
Makenzie Bogart, Esq. #52780
Kishinevsky & Raykin, Attorneys at Law
2851 South Parker Road, Suite 150
Aurora, CO 80014
Telephone: (720) 523-8106
E-mail: makenzie@coloradolawteam.com
Attorney for Plaintiff